IN  THE  UNITED  STATES  DISTRICT  COURT
FOR THE  NORTHERN  DISTRICT  OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| International Watchman, Inc., | ) | CASE NO. 1:13-cv-1986 PAG |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHN |
| | ) | |
| vs. | ) | |
| The NATO Strap Co., *et al.,* | ) | |
| | ) | **PLAINTIFF'S MOTION TO COMPEL** |
| Defendants/ | ) | |
| Counterclaimants, | ) | |
| | ) | |
| vs. | ) | |
| Ronald E. Sabo, Jr., | ) | |
| Counterclaim-defendant. | ) | |

NOW COMES the Plaintiff, *International Watchman, Inc.* ("Plaintiff"), by and through counsel and respectfully moves this honorable court to immediately order the Defendants to produce documents consistent with their Request for Production of Documents ("Request") and in accordance with the Federal Rules of Civil Procedure.  Further, Plaintiff requests this court to order the Defendants to produce documents consistent with the prior Order of this court.

  **I.**  **Statement of the Case**

  This is a trademark infringement case.  The Plaintiff owns the mark NATO® pertaining the narrow classification of watches, watch bands, and straps.  The defense in this case argues

Motion to Compel          1

that NATO® is a generic terms for this classification.  Plaintiff has extensive survey evidence showing that the NATO® brand is not generic for watches, watch bands, and straps.

## II. Background to the Discovery Dispute

In prosecution of this case, Plaintiff served their Requests for Production of Documents and Interrogatories.  (See Plaintiff's Requests for Production attached hereto and incorporated herein as "Exhibit 1.")  After failing to provide full responses, on May 16, 2014, this court issued the following order (Doc. 40):

> Order: This matter is before the Court upon the letters from counsel outlining a discovery dispute. The Court has reviewed the letters and finds as follows: 1. Defendants must provide interrogatory responses from the non-responding defendants. 2. Defendants must produce the "flash drives" mentioned in the letters. 3. Defendants must produce hard copies of any "previous" version of any website of defendants that they intend to rely on. 4. Defendants need not produce hard copies of their current websites as those electronically stored documents are equally available to plaintiff. 5. Defendants need not produce copies of third party websites as those documents are not in defendants' possession, custody, or control and are equally available to plaintiff. Defendants must identify the websites they intend to rely on consistent with this Courts trial order requiring the disclosure of trial exhibits. 6. Defendants have agreed to produce a collective response to plaintiff's document requests, indicating that the production is the same for all defendants. It is not clear whether that production encompasses sales information or whether this collective response is acceptable to plaintiff. To the extent a collective response is not acceptable, plaintiff must file a motion to compel. 5. Although plaintiff argues that certain answers are "non-responsive and evasive" or amount to "incoherent nonsense," the Court is unable at this time to address this issue because plaintiff fails to point to any specific answer in its letter to the Court. Accordingly, plaintiff must file a motion to compel outlining the specific deficiencies if it seeks any additional relief not afforded by this Order. 6. The responses required as a result of this Order must be produced on or before May 23, 2014.

In response to this Order, and after being given extensions of time by Plaintiff's counsel, Defendants again proffered discovery responses.

Generally, in response to Plaintiff's Request to Produce, the Defendants' counsel provided four (4) USB electronic drives purportedly with data from all 13 defendants.  These four (4) drives were not labeled and it was impossible to discern with any specificity exactly which Defendants these documents were in relation to, or to exactly which requests to which

they were responsive.  Plaintiff in turn provided these USB stick drives to a copy service who was able to download and print most, but not all, of the documents.  Some of the documents were formatted such that they were unprintable (i.e., spreadsheets with so many columns and rows that they cannot be printed on any size paper; these spreadsheets also had unintelligible headings so that the information was useless).

The USB drives also had no identifying cover sheets, no exhibit references, and no BATES-stamp numbers on any of the documents, or any other way of ordering them, identifying them, or otherwise providing direction on how to interpret them corresponding requests.

Generally, Plaintiff would request that Defendants' submissions be ignored in their entirety and be ordered to provide adequate and complete responses, as appropriate under the Federal Rules and this court's Order, as well as for attorney's fees and costs associated with the review of the inadequate responses and preparing and pursuing this motion.  Alternatively, and Plaintiff understands it to be a serious sanction, but these discovery responses are so pitiful that this court would be within its discretion to strike defenses in this case as a sanction.

### III. Responses to Specific Requests

In some greater specificity, in Plaintiff's REQUEST NO. 1, which properly requested "All documents, things, and electronically stored information that refer or relate in any way to U.S. Trademark No. 3,907,646 (the '646 mark), and U.S. Trademark No. 4,093,914 (the '914 mark), or to its validity, enforceability, or scope," Defendants Objected to this as overly broad in addition to merely argument of their defenses.  However, it was stated that "Defendants will produce any appropriate, non-objectionable, non-redundant, representative, relevant, and non-privileged documents and/or materials…"  However, nothing was produced.  (See Defendants' Responses to Plaintiff's Requests for Production attached hereto and

incorporated herein by reference as "Exhibit 2."

In Plaintiff's REQUEST NO. 2, which properly requested "All documents which have ever been drafted, considered, or evaluated by or for you as to the validity, enforceability, or scope of the subject matter disclosed in the '646 mark and '914 mark, including any legal opinions regarding invalidity/validity and non-infringement/infringement," nothing was produced. Not everything requested in this document request is protected from disclosure by the attorney-client privilege; for example, the fact of legal consultation about the validity of the trademark is not protected from disclosure by the attorney-client privilege.

In Plaintiff's REQUEST NO. 3, which properly requested "All documents relating to any validity search conducted relating to the subject matter of the '646 mark and '914 mark," Defendants did not produce anything and merely recited Internet searches, which are not validity searches. Nothing was produced, and Internet searches are not validity searches.

In Plaintiff's REQUEST NO. 4, which properly requested "All documents, things, and electronically stored information that you contend evidences that you have not infringed, and/or are not infringing to the '646 mark and '914 mark," Defendants produced nothing.

In Plaintiff's REQUEST NO. 5, Plaintiffs requested "All documents, things, and electronically stored information, which you contend constitutes and/or evidences "prior use" to the '646 mark and '914 mark. Specifically, Plaintiff desires to inspect each actual item/product in your possession that you contend constitutes "prior use" and each printed publication in your possession which you contend contains "prior use.""  Defendants answered with the following:

> ANSWER:
> In addition to the above searches on the Internet, there is E-mail evidence from sellers

of NATO bands who have stated they have been selling NATO bands in the United States since at least as early as 2001. The following is exemplary.

> Dear Gary,
>
> Thank You for your email. We have been selling NATO strap since 2001. Meanwhile, please let us know if we can be of any assistance.
>
> Warmest
> Regards
> Anders Tan
> Gnomon
> Watches
> url: www.GnomonWatches.com
> email: info@gnomonwatches.com
>
> On 2014-02-16 05:29, Gary Vandenberg wrote:
>
> This is a HTML email and your email client software does not support HTML email!
> Name: Gary Vandenberg
> Email: info.debeerwatchbands@yahoo.com
> Message: We are one of the companies in the US being sued by a company that claims they "invented" the term "NATO" as is relates to watch bands. If you don't mind, would you please let me know how long you have been selling NATO bands to u.s. customers?

Defendants will produce any appropriate, non-objectionable, non-redundant, representative, relevant, and non-privileged documents and/or materials at a time and place mutually agreed upon."

In response, nothing was actually produced. The above email was not provided, although if it was it was "buried" and not identified as such.

In response to REQUEST NO. 6 for "All documents, things, and electronically stored information that refer to or relate to any trademark application filed by Defendant relating to any watch band or watch," nothing was produced except Crown & Buckle

produced trademark opposition documents relating to Rolex and a letter from a company called Maratac, Inc. alleging trademark infringement. However, this is just an assumption since as outlined above these were not identified in any manner as being responsive to this request.

In REQUEST NO. 7, Plaintiffs requested "All documents, things, and electronically stored information that refer to or relate to any trademark or trademark application owned by Defendant or licensed by Defendant relating to watch bands." Nothing was produced.

In response to REQUEST NO. 8 for "All documents, things, and electronically stored information that that Defendant believes gives them the right to make, use, import, and/or sell their watch band products marketed in connection with "NATO" or "nato"," nothing was produced. Whether Defendants have the legal right to use "NATO" is the issue in this case. Defendants cannot merely conclude they have a legal right to use the mark, but rather this shall be this Court's ultimate determination.

In response to REQUEST NO. 9 for "All documents, including, but not limited to: product brochures, engineering and product specifications, engineering change orders, drawings, schematics, referring or relating to the formulation, design, development, testing, manufacture, assembly or operation, or proposals for the Defendant's watch band products marketed in connection with "NATO" or "nato,"" some documents were produced that are responsive to this request, but again, were not labeled or identified in any specific manner . Worn & Wound and Crown & Buckle produced website printouts showing photos of their products as well as email correspondence with their suppliers. No other Defendants produced documents responsive to this request.

In response to REQUEST NO. 10 for "All documents, things, and electronically stored information regarding communications between Defendant and any manufacturer of

watch bands that are sold in connection with the terms "NATO" or "nato,"" Worn & Wound and Crown & Buckle produced email correspondence with their suppliers. No other Defendants produced documents responsive to this request.

In response to REQUEST NO. 11 for "All documents, things, and electronically stored information identifying each and every distributor and/or sales entity that purchases or has purchased watch bands from Defendant for resale," nothing was produced other than Panatime, Worn & Wood, Crown & Buckle, and Variety/Expo International. Panatime's "Sales Summary" has no dates. Worn & Wounds sales summaries and invoices only cover select dates in 2012, 2013, and 2014. Variety/Expo International's receipts are dated 4/15/13 to 5/9/14.

In response to REQUEST NO. 12 for "All documents, things, and electronically stored information evidencing (including, but not limited to, invoices, purchase orders, sales receipts, etc.) to whom each and every sale of any watch bands were made, in which the marketing and/or sale of said watch band utilized "NATO" or "nato" in any manner," no responses to the request were produced other than by Panatime, Worn & Wound, Crown & Buckle, and Variety/Expo International. Crown & Buckle produced a list of their customers.

In response to REQUEST NO. 13 for "All documents, things, and electronically stored information evidencing the total number of sales of watch bands in which the marketing and/or sale of the watch band utilized "NATO" or "nato" in any manner," nothing was produced other than by Panatime, Worn & Wound, Crown & Buckle, and Variety/Expo International.

In response to REQUEST NO. 14 for "All documents, things, and electronically stored information evidencing sales, by month, of watch bands from the first sale to the

present time, in which the watch bands were marketed or sold with the use of the word "NATO" or "nato," nothing was produced other than by Panatime, Worn & Wound, Crown & Buckle, and Variety/Expo International.  No Defendant identified their first sale date, except, possibly Variety/Expo International.  Panatime's "Sales Summary" (no exhibit number or Bates stamp), has no dates.  Worn & Wounds' sales summaries and invoices only cover select dates in 2012, 2013, and 2014 (no exhibit number or Bates stamp). Variety/Expo International's sales receipts (no exhibit or Bates stamp) are dated 4/15/13 to 5/9/14.

In response to REQUEST NO. 15 for "All documents, things, and electronically stored information of purchase orders, invoices, and documents for watch bands in which the Defendant purchased the watch bands and resold or marketed them utilizing the words "NATO" or "nato" in any manner," only Worn & Wound and Crown & Buckle appeared to produce email correspondence with their suppliers (no exhibit number, or Bates number). Although, it is unclear whether the products referred to in those documents were resold using the word "NATO".

In response to REQUEST NO. 16 for "All documents, things, and electronically stored information evidencing all expenses Defendant associates with the sale of watch bands (including, but not limited to, marketing, manufacture, advertising, shipping, etc.)," only Worn & Wound and Crown & Buckle appeared to produce email correspondence with their suppliers (no exhibit or reference numbers).   Only Crown & Buckle produced accounts payable spreadsheets (no identifiers) and advertising expenditures spreadsheet (no identifiers).

In response to REQUEST N0.17 to "Produce an actual sample of each version of watch  bands that the Defendant markets and/or sells using the name "NATO" or "nato" in any manner," nothing physical was produced, or at the very least identified for further

production or inspection.

In response to REQUEST NO. 18 to "Produce representative samplings of all of Defendant's advertising for watch bands for the years 2010 to the present day," only current websites that are available today were provided. These are only relevant for today's date. Only Worn & Wound and Crown & Buckle appeared to print off website materials (unidentified), and most have dates or URL addresses removed, indicating that they were printed, redacted, and then scanned to different places of the various USB drives.

In response to REQUEST NO. 19 for "All documents, things, and electronically stored information evidencing payments made by others to Defendant for the purchase of watch bands that are sold or marketed using "NATO" or "nato" in any manner for the years 2010 to the present day," nothing was produced other than what appeared to be from Panatime, Worn & Wound, Crown & Buckle, and Variety/Expo International.

In response to REQUEST NO. 20 to "Produce documents identifying all of Defendant's affiliates, distributors, retailers, and resellers," Defendants answered "Most defendants do not have any such entities." There is no identification as to which ones do and which ones do not. Defendants further answered "Moreover, it is not understood what this information could have to do with the present allegations of trademark infringement. Nonetheless, Defendants will produce any appropriate, non- objectionable, non-redundant, representative, relevant, and non-privileged documents and/or materials at a time and place mutually agreed upon." No documents were provided showing any affiliate or distributorship relationships.

In response to REQUEST NO. 21 for "All documents, things, and electronically stored information regarding sales reports for the Defendant's watch bands," the only production appeared to be for Panatime, Worn & Wound, Crown & Buckle, and

Variety/Expo International. However, these remain unlabeled and otherwise uncertain.

In response to REQUEST NO. 22 for "All documents, things, and electronically stored information regarding sales forecasts for the Defendant's watch bands," no sales forecasts were produced, and if no such forecasts exist this was not ascertainable from their response.

In response to REQUEST NO. 23 to "Provide representative samplings of the history of the Defendant's website(s) advertising for its watch bands, Defendants refer to the Internet "Wayback Machine," which is not admissible as evidence. The "Wayback Machine" documents Defendants intend to rely upon would need to be provided to Plaintiff. Further, those records would need to be authenticated, which would be extremely difficult to properly do. Only Worn & Wound and Crown & Buckle printed off website materials (again, an assumption since no authentication or identification is provided) and most do not have dates or URL addresses.

In response to REQUEST NO. 24 for "All documents, things, and electronically stored information related to Defendant ever being accused of selling knock-off products, i.e., products that are copies of an original product that sell for less than the original," there did not appear to be any documents produced related to this request.

In response to REQUEST NO. 25 for "All documents, things, and electronically stored information of any expert reports, notes, drafts, etc., regarding the '646 mark or '914 mark," there were no identifiable documents provided to this request.

In response to REQUEST NO. 26 for "All documents, things, and electronically stored information (including all exhibits) that Defendant will rely upon during any hearing, or trial," there were no identifiable documents provided to this request.

In response to REQUEST NO. 27 for "All documents, things, and electronically stored information related to Defendant being accused of intellectual property infringement,"

the only responses appear to be a trademark infringement letter and an opposition by Rolex that appear to be produced by Crown & Buckle.

In response to REQUEST NO. 29 for "All documents, including, but not limited to: product brochures, engineering and product specifications, engineering change orders, drawings, schematics, referring or relating to the formulation, design, development, testing, manufacture, assembly or operation, or proposals for any watch bands," some documents were produced that are responsive to this request. Worn & Wound and Crown & Buckle appeared to produce website printouts showing photos of their products as well as email correspondence with their suppliers that occasionally includes a sketch (again, all unreferenced with no indicia). No other Defendants produced documents responsive to this request.

In REQUEST NO. 30 for "All documents, things, and electronically stored information identifying each and every offer for sale of Defendant's watch bands that use "NATO" or "nato" in any manner," Worn & Wound and Crown & Buckle appeared to produce website printouts showing photos of their products as well as email correspondence with their suppliers that use the term "NATO." No other Defendants produced documents responsive to this request.

In response to REQUEST NO. 33 for "All documents, things, and electronically stored information regarding Defendant's purchasing of internet keywords used to advertise or sell its watch band products (i.e., with Google Adwords or Adsense programs, etc.)," there did not appear to be any documents produced responsive to this request.

In response to REQUEST NO. 34 for "All documents, things, and electronically stored information evidencing all money spent by Defendant for internet keyword advertising of the word "NATO" or "nato" relative to any watch bands," there did not appear

to be any documents produced responsive to this request.

In response to REQUEST NO. 35 for "All documents, things, and electronically stored information regarding the internet metatag (source) information for each website affiliated with any Defendant having any of the following words incorporated therein at any time: NATO, nato, NATO-GlO," there did not appear to be any documents to this request.

In response to REQUEST NO. 36 for "All documents, things, and electronically stored information mentioning the mark "NATO" or "nato" anywhere within the document," only Worn & Wound and Crown & Buckle appeared to produce website printouts showing photos of their products as well as email correspondence with their suppliers that use the term "NATO." No other Defendants produced documents responsive to this request.

And, in response to REQUEST NO. 37 for "All documents, things, and electronically stored information evidencing the trade shows Defendant has attended or advertised within during the past ten years for watch bands," there did not appear to be any documents responsive to this request, but only an argumentative response that a response would only be provided "unless confirmed to the relevant NATO subject matter."

### IV. <u>Law & Argument</u>

Defendants in this case continue to be argumentative rather than responsive, and fill their responses merely with the same redundant arguments concerning alleged "genericness" of the NATO® and NATO-G10® marks. The trademarks NATO® and NATO-G10® have not been judicially determined as being generic for watches, watch bands, and straps, and having been duly issued by the United States Trademark Office, have the benefit of a presumption of validity. The defense of "genericness" is just that, a defense, and it is their burden of proof which cannot be met merely by making numerous and

redundant allegations of such.

Even further, during the time in which Plaintiff was forced to review numerous, meaningless, unreferenced, incomplete, and unidentified documents and responses, the Defendants' counsel recently emailed Plaintiff's counsel a purported "safe harbor" letter under Rule 11 alleging, solely, their conclusory allegation of the genericness of the NATO® mark.

While the preposterousness of Defendants' actions will be handled in course, it is being referenced here to document the ongoing pattern and nature of conduct that Defendants and their counsel chose to engage. Plaintiffs in this case have gone to the considerable expense of spending tens of thousands of dollars conducting surveys, which very thoroughly debunk any notion of genericness as argued by Defendants.

Under the Civ.R. 37 (a)(2)(B), "If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request."

Under Civ.R. 37 (a)(3), "Evasive or Incomplete Disclosure, Answer, or Response. For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."

Civ.R. 37 clearly states a sanction for failure to provide discovery may be imposed only for the failure to obey a court order to provide documents. Because Defendants have failed to obey this court's May 16, 2014 order, it is not unreasonable here to sanction the Defendants.

The Plaintiff respectfully requests that this court order Defendants to produce all of the documents responsive to Plaintiff's Request for Production of Documents, bates-stamped, and organized for each Defendant in this case clearly as responsive to each particular Request number.

It seems silly to Plaintiff that they would need to put in such a motion in this case. Plaintiff responded to Defendants' document requests with bates-stamped numbered documents, each categorized into sections, which corresponded to the Request numbers as issued by Defendants. The Defendants' responses in this case were basically four (4) unlabeled stick drives. Each contained documents in no logical order or sequence. None were identified as responsive to any particular Request number. The documents were mixed, unlabeled, and incomprehensible. To think Plaintiff could print these documents, and then pass them to an expert witness to reference in an expert report on damages, is impossible. What was produced cannot be used in such a way.

Defendants' counsel has acted this way throughout these proceedings. Recall the "settlement conference" that was meaningless. Both Plaintiff's counsel and the court were amiss as to why it was even conducted. Then, the defense provided totally useless responses to discovery, including interrogatory responses that weren't even over defense counsel's signature. Then when ordered to provide discovery, the defense assembled a set of responses that was not responsive to each request.

Indeed, in litigation, parties can produce documents as kept in the ordinary course of business. In this case, however, make no mistake this is not what was provided. These Defendants did not maintain their records hodgepodge together on four (4) random stick drives. These documents were picked and pulled from various places, some responsive, many not, and were mixed together on stick drives. Most were not labeled. None were identified as

responsive to any specific Request number as made by Plaintiff.  None were Bates-stamped.  The documents as produced do not enable Plaintiff to build their case on damages.  Some of the documents could not even be printed from the drives because of their bizarre formatting and spreadsheets so large one would need billboard sized paper to print all the rows and columns on one sheet.  This sequence of events should give rise to payment of fees involved in wasting time digesting Defendants' charade of a response.  It actually justifies harsher sanctions.

## V.    Conclusion

Wherefore, the Plaintiff respectfully requests the court to issue an order compelling Defendants to produce records in response to Plaintiff's requests, at a minimum, that identify to which request they are responsive, i.e., by bates-stamp sequence, or exhibit sequence, or labeled, or something, so that Plaintiff can discern what is responsive to what requests and by which Defendant.

Most Respectfully Submitted,

　　/s/ John D. Gugliotta　　　　　
**C. VINCENT CHOKEN (0070530)**
**DAVID A. WELLING (0075934)**
*CHOKEN WELLING LLP*
3020 West Market Street
Akron, Ohio 44333
Tel.    (330) 865 – 4949
Fax     (330) 865 – 3777
vincec@choken-welling.com
davidw@choken-welling.com

**JOHN D. GUGLIOTTA (0062809)**
*MCCARTHY LEBIT, CRYSTAL & LIFFMAN*
101 West Prospect Ave., Ste. 1800
Cleveland, Ohio 44115
Tel.    (216) 696 – 1422
Fax     (216) 696 – 1210
jdg@mccarthylebit.com

*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing has been served electronically upon all counsel of record by the Court's electronic filing system on the date electronically time-stamped above.

                                           ___/s/ John D. Gugliotta_____
                                           **JOHN D. GUGLIOTTA (0062809)**

                                           *Counsel for the Plaintiff*